*527 IN 1811, before chief justice Boyle, judges Wit-i acf, Lo<5aN, and Clark., this cause was first heard *528 and the following opinion of the court delivered by 1⅝ Logan.
The furyey mouth of Glenn’s creek, thence down mile when re. dneed to^ a from the^bJ ginning to run up the creek an(f”1nduding it, from the lower extremi-*7 extend a line parallel to the general course within the fur-vey, this •ended° (o '⅛ that a Hue at rjgif aagin to will give the ves. , quantity and ebse the fur-
Entry at a large t-andy three OT four miles above the SN'⅝⅛ of Kentucky, running up the r,'Tct 1uaa_ ”
*528 This is a suit for land under adversary titles. It is necessary therefore for Sneed, who was the complainant below, to establish a superior equity, in order to prevail against the title at law. He claims under an entry oí a 1000 acres, made m 1784, “ beginning at the corner of John Sharpe’s entry of 251 acres at the moutj1 Qf Q|enn’s Cl-eek, running down the river one mile when reduced to a straight line, thence rrom the beginning up Glenn’s creek for quantity.”
Glenn’s creek appears to have been generally knowa by that name at the date of this entry. It is therefore the opinion of the court that the entry is valid.
As to the manner of surveying it, regard must be had to the call tor Sharpe s entry. It begins “ at the mouth of Glenn’s creek, and runs up the river and up creek for quantity.” This entrv must be understood as being confined to the upper side of the creek, binding on the same. The call then for a particular corner °* the entry thus placed, and using the same expression contained in it, to run “ up the creek for quantity,” ought to receive the same construction.
^’s therefore the opinion of the court that the entry of the appellee should be surveyed from Sharpe’s corner at the mouth of Gleen’s creek, down the meanders of the river one mile when reduced to a direct line, thence from the extremities thereof up the creek, binding thereon, and including the same, so far that a paraqei line to the general course thereof, from the lower termination oí the ime on the river, will with the boundary at right angles to these parellel lines include a 1000 acres.
But as the appellant’s is the superior claim so far as it conforms to the requisitions of law, it becomes ne-f,PQQnrv m determine whether his entry IS valid, and for any part of the land in contest cessary to determine whether his entry is , , 1 has been correctly surveyed ?
j|e clajms under an entry of 150 acres, made in , r ... J . r virtue oí military warrants, on the 27th of April, 1780, is the name of James Haydon, adjoining an en-trY on the same day, of 200 acres, by John Prke, on the upper side, and to run up the river for *529 Price’s entry calls to “ begin at a large quantity. pond three or four miles above Leesburg, on the ¡north side of Kentucky, running up the river for quantity.”
Ca,¡ fcr Lashwginstead of £««««>«, not íot e m~
The evi^en«^leavin| ⅛ ⅛, there were two jouds con-nec}ei by « dram, or oam iy ««/pond,and the distance of Poni fr0Ir> gether with the length of the pond, rendering it doubtful what iocaj¡6y the entry «hould 14 *“• ⅜
In investigating this entry the court must determine @n the sufficiency of the call for Leesburg ; for deprived of this call, the entry cannot be supported.
There is no evidence in the cause which proves the notoriety of Leesburg. But it is admitted by the ap-pellee, that the place referred to was generally known by the name of Leestown at the date of this entry. It therefore becomes necessary to determine, whether from the general notoriety of Leestown, that would have been understood as the place intended ?
la deciding this question we do not feel the neces- - r 1 ~J ,. . - , sity ot descending to a minute examination between the precise import of the terms town and burg ; nor to question the correctness of the argument, that the calls to lie “ above Leesburg, on the north side of Kentucky, and running up the river for quantity,” do not necessarily imply that Leesburg is situated on the 1 ⅝ 1" i i• river, or that me land lies on the same.
But admitting the whole force of these criticisms, and still we should entertain the opinion that to construe this entry with the usual liberality bestowed in expounding entries, the calls combined carry conviction to the minds of men in general, that the land located lay contiguous to the river, and with regard to the precise spot on the river, that must depend on, and be ascertained by the other calls of the entry.
Regarding then these expressions as leading to a just and fair inference' that the place refered to as Leesburg lies on Kentucky river, it remains,to examine whether the other calls are sufficiently descriptive in the intended?
Kentucky river, one of the principal rivers of the country, pawing through the interior and very heart of the same, must from the general history of the country be taken as possessing unquestionable notoriety when this entry was made ; and it seems therefore that the fair and satisfactory inference is, that the principal settlements on the same were also notorious.
Under this view of things it is believed that a subsequent locator would have been informed, upon reasonable inquiry, tlgat there was no other place ou *530 the rivér which so nearly fit the name and descript!oü given as the one refered to. As he could receive no information of any other place on the river being known or even called by the name of Leesburg, or any other name originating frorft a supposed settlement or act of Lee, he would justly have concluded that Lees town was the place intended. Or otherwise, soma obscure and unknown place must be supposed to havo been meant ; for from the situation of the country at that time, and the general notoriety of Kentucky river, and the towns and settlements in the country, ño other conclusion appears to be warranted.
Now that the place refered to by the name of Lees-burg, cannot be fairly presumed to have been an obscure and almost unknown place in the country at that period, seems to result from these premises ; first, that the term Leesburg, implies a town or settlement of some sort ; secondly, that Lee hull p -evious to that time made a settlement and erected a kind of town on the Kentucky river, which from a knowledge of th® history of the country is known, and its settlement implies sufficient notoriety ; and thirdly, that Lees-burg is refered to in the entry, as identifying the large pond and the land called for several miles aboye» Ttie presumption is therefore violent, that the place refered to as Leesburg was fully understood by the locator as generally known, and seems to exclude the idea that it was obacure and almost unknown.
Another argument in support of the identity of Jjf-estown as the place refered to in this entry, is deducible from the call for “a large pond,” represented therein as lying three or four miles above said town.
If a locator entertained doubts, with regard to the identity of this call, an inquiry of those conversant about Leestown, and for three or four miles above, whether there was a large pond there, might fairly have been expected to solve the difficulty ; or even an examination for the pond within the given distanc® above, would not have been unreasonable in a case so well calculated to induce the expectation that the pond called for was there situated ; and the starch would» have satisfied the inquiry with respect to Leesburg, and also the call for the pond, the two objects being thu® situated in relation to each other.
*531 This pond approximates within about 60 poles of the river, is about three miles aliaje Leestown, about half a mile in length, and bears off in its general course from the river nearly at right angles, inclining a lew degrees up the river from that part of it whici approximates nearest the river.
It may be proper to dispose of some other ponds reí presented in the connected platt returned in this cause, before we proceed faither with this. The appellee has caused one to be laid down lying nigher the river, and about four miles above Leestown. This pond however is only about one hundred yards long, and is small in comparison with the other ; but as the entry calls fot a large pond, it is therefore obvious, which of the two was intended. Id addition to this it may be observed, that the small pond is immediately below the mouth of Glenn’s creek, which would have been probably noticed in the entry had this been the pond intended. Otner ponds are also represented, but they are on the waters of Elkhorii, and are almost at right angles from the river at Leestown, or lower down the river. From what has been said relative tq the lair and curamos import of the expressions in the entry a above Lees-burg, aud running up the river for quantity,” further observations relative to these ponds are rendered unue-. Sessary.
In the case decided by this, court, between Greenup and Line’s heirs, the call in the entry for Leesburg was held sufficient; although it derived no aid from a call, describing the place, as the entry in this case does by the call for a large pond three or four miles above said, flace. But there was evidence in that case, that •eestown had been sometimes called. Leesburg. And the court, from the general notoriety of Leestown, together with the absence of all other places calculated to embarrass the call, sustained the entry.
Upon a tull consideration of all the calls in this entry taken together, it is the opinion of the court (judge Clark dissenting} that the entry ought to ba construed as refering to Leestown.
Having then Leesburg, the river and the pond thus ideuulicu and established, the next inquiry is, whether the calls combined are sufficiently precise and descriptive t» support the claim ?
*532 A diversity of opinGa wit r r f c virt relative to Ae manner of surveying Ais » rung ara'ics pretty strongly against-its validity ior vent of p've:si"n. But although the conclusion touching its \ a >, ¡ -o '-s might seem fairly inferable, ¿"cording to the d if. rence of opinion entertained ©n that subject, yet it cannot be conceded that the argument is correct. It may sometimes happen that the whole court cannot accord in the same opinion, and that an entry which one member of the court may think sufficiently special and precise, another mav be equally sanguine ought not to be supported. But that which appears to one certain and precise to a reasonable intent in answering the object of its description, does not become less so, from the mere circumstance of another viewing it differently. The confidence of being- right may (re thereby weakened, but the judgment must retain its ground, unless convinced of its error.
The locator commences the description of his land it seems with a view to the pond and the river taken in connexion : he begins at the one, and runs up the other for his quantity. The relative situation of the two objects in their nearest approximation very probably bore on his mind in forming his location. He intended to fun up the river for his quantity, and to begin at the pond. But at what part of the pond is the question of doubt ? Whether it shall be at that point highest up, but most distant from the river, or at the end ftearest to the river ?
Upon this point the court is equally divided. But taking either as the place of beginning, and a considerable part of the same land will be comprehended. It seems to the court therefore that the entry thus far ought to be sustained.
It becomes necessary to ascertain the position of the land embraced by surveys executed in both way's, in order to place the entry of the appellant adjoining thereto.
The chief justice and judge Clark are of opinion that the entry should be surveyed from the upper end ©f the pond, extending a line up, and parallel with the general course of the river so far that lines at right angles from each end thereof to the -river, ar i thence *533 with the meanders of the river, will include 200 acres.
And the other judges are of opinion, that the entry-should be surveyed from the nearest points between the lower end of the pond and the river, running with both, up the river and on the upper side of the pond, so far that lines extended as nearly as may be at right angles from each until they intersect, will include the quantity as nearly in a square as the situation of the river and pond will permit.
The appellant’s entry should then be fixed to adjoin the upper boundary of the land comprehended within both these surveys, beginning at the river and extending with said boundary the base of a square of 150 acres, thence from each end of the base Up the meanders of the river and parallel with the general course thereof so far as will include the quantity of 150 acres by the upper boundary parallel to the base.
To so much of the appellant’s claim as will fall within a survey thus made, he has the superior right; but for the residue, which will be included by the ap-pellee’s claim laid down as herein directed, and is also within his patent, his right is paramount.
It may be proper to notice an idea suggested, in relation to Price’s own understanding of his entry, as manifested by his second entry exhibited, which calls to adjoin his former entry on the side next the river.
This entry is posterior to the appellant’s, and it is conclusive to observe, that no subsequent act or opinion of Price could destroy or affect a prior entry, which otherwise was valid. The argument, if it proved any thing, would prove this, that Price’s second entry might vary the position of the appellant’s depending on his first entry, and in so doing appropriate a part of the land comprehended by the appellant’s entry.
The decree of the circuit court must be reversed with costs.
A rehearing was granted, and now at this term it was heard again, and the opinion of the court delivered by judge Logan as follows, on the 29th May, 1812. '
This cause stands on a rehearing ordered on the *534 discovery of a mistake of fact in the former op'miofts which is deemed material for further consideration.
The claim of the apeilant depends on an entry which calls to begin “-at a large pond, three or four miles above Leesburg, on the north side of Kentucky, running up the river for quantity.”
The opinion assumes as a fact that the pond approximates within about sixty poles of the river, and is predicated moreover on the idea that there was hut one, and not two ponds connected only by a small drain from one to die other.
The connected pilaus returned in this cause do not present a representation of those objects precisely alike, neither with respect to the distance from the pond to the river, nor as to the drain communicating between the two main bodies of water which constitute the pond. But the court was led into the mistake as to the distance irum the pond to the river principally by supposing tne surveys to have been laid down on a larger scale than what they were on the plait.
Whether there were two, or was but one pond, is, »ut very clear from the evidence and exhibits in the cause. But viewed in either light, inasmuch as tbs distance from the pond to the river is about 120, instead of foO poles, as was supposed in the former opinion, U torui,s an important difference in the consideration of tiiis case. In the opinion delivered the court was equally divided with regard to the manner of surveying vile entry on which tne appellant's de», pends, whether the survey should commence at the upper end of the pond, and be extended up the general course of the river, and thence at right angles to the river binding thereon ; or should lie from the nearest points between the river and pond, binding on both as nearly in a square as practicable.
The distance being greater between those two objects called for in the entry than was supposed, has produced a material change in the principles or reasons which governed the court in favor of each mode. The idea of connexion between both the pond and riverfront the calls of the entry inclined to those parts of them having the nearest approximation to each other, But the distance between them being about double what was supposed, ia an entry of 200 acres, applied *535 M the situation of those objects, leaves so much doubt and uncertainty with regard to the place of beginning on the p >nd, that we are of opinion the former opinion of this court ought not to be sunained.
Wherefore it is decree 1 that 'he same be set aside, sad that the decree of the circuit court be a dinned.